UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| ELEAZAR VASQUEZ, | § | |
| | § | |
| Plaintiff, | § | |
| VS. | § | CIVIL NO. 2:13-CV-131 |
| | § | |
| BRAD LIVINGSTON, *et al*, | § | |
| | § | |
| Defendants. | § | |

**MEMORANDUM AND RECOMMENDATION**
**TO DISMISS ACTION**

This civil rights action was filed by a Texas state prisoner pursuant to 42 U.S.C. § 1983.

Under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996), any prisoner action brought under federal law must be dismissed if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. *See* 42 U.S.C. § 1997e(c); 28 U.S.C. §§ 1915(e)(2), 1915A. Plaintiff's action is subject to screening regardless whether he prepays the entire filing fee or proceeds as a pauper. *Ruiz v. United States*, 160 F.3d 273, 274 (5th Cir. 1998) (per curiam); *Martin v. Scott*, 156 F.3d 578, 580 (5th Cir. 1998) (per curiam), *cert. denied*, 527 U.S. 1041 (1999). Plaintiff's *pro se* complaint must be read indulgently, *Haines v. Kerner*, 404 U.S. 519, 520 (1972), and his allegations

must be accepted as true, unless they are clearly irrational or wholly incredible, *Denton v. Hernandez*, 504 U.S. 25, 33 (1992).

Applying these standards, it is respectfully recommended that plaintiff's Eighth Amendment claims alleging failure to protect and deliberate indifference to his serious medical needs be dismissed for failure to state a claim and/or as frivolous pursuant to 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(b)(1).

## I. Jurisdiction.

The Court has federal question jurisdiction over this civil rights action pursuant to 28 U.S.C. § 1331.

## II. Background facts and plaintiff's allegations.

Plaintiff is a prisoner in the Texas Department of Criminal Justice, Criminal Institutions Division ("TDCJ-CID"), and he is currently confined at the Boyd Unit in Teague, Texas, although his complaint concerns events that occurred while he was housed at the McConnell Unit in Beeville, Texas. He filed this lawsuit on May 13, 2013, complaining that defendants failed to take appropriate measures to protect him from another inmate, and failed to ensure that he receive his diabetic medications and snacks when he was placed in special housing. (D.E. 1). He named as defendants: (1) Brad Livingston, TDCJ Executive Director; and McConnell Unit officers/officials (2) Warden Davis; (3) Major Adam R. Gonzalez; (4) Major Evelyn Castro; and (5) Nurse Campos. (D.E. 1 at 3).

A *Spears*[1] hearing was conducted on July 1, 2013. The following allegations were made at the hearing or in plaintiff's original complaint.

Plaintiff is a homosexual and is currently serving a 5-year sentence for indecency with a child. Plaintiff acknowledged that, because of both his sexual orientation and the nature of his offense, he is at greater risk of harm within the prison system, and therefore, he is housed in protective custody/safekeeping, and classified as "P-2." Prior to June 2012, he was housed in 7-Building, H-Pod, and had certain freedoms, including being able to walk unrestrained to the medical department to receive his daily insulin shots.

As a P-2 inmate, plaintiff was not supposed to come into contact with non-protective custody inmates unless those offenders were escorted and in restraints. However, in violation of prison policy, medium custody and other higher security-risk offenders housed in 8 Building often came to the medical cage unescorted and unrestrained. Plaintiff had filed grievances with prison officials complaining about this practice, but it had not been corrected.

On June 8, 2012 at approximately 4:00 p.m., plaintiff was in the housing cage in medical waiting to receive his insulin shot. A close-custody offender named Burns arrived in the area and began sexually assaulting plaintiff by poking his fingers through the cage holes to grab and touch plaintiff's buttocks. Plaintiff told Offender Burns to stop touching him, and in response, Offender Burns entered the cage and began punching

---

[1] *Spears v. McCotter*, 766 F.2d 179 (5th Cir. 1985); *see also Eason v. Holt*, 73 F.3d 600, 603 (5th Cir. 1996) (stating that testimony given at a *Spears* hearing is incorporated into the pleadings).

plaintiff in the face. The medical officer called for assistance, and Offender Burns was pulled away from plaintiff. Plaintiff suffered a black eye and other visible bruises, and he was escorted to medical for evaluation.

Following the June 8, 2012 assault, as per policy, plaintiff was placed in pre-hearing detention ("PHD") in 11 Building pending an investigation of the incident. On June 12, 2012, plaintiff filed a life in danger ("LID") claim directed to Warden Davis, complaining that his life was in danger and that the failure of prison officials to keep him safe was adversely affecting him physically and mentally. In response, an Offender Protection Investigation ("OPI") was initiated. The investigation confirmed that plaintiff had been attacked and that Offender Burns was the sole aggressor.

Following the OPI, plaintiff went before a Unit Classification Committee ("UCC") which included Major Gonzalez and Major Castro. The UCC members denied a unit transfer, but assured plaintiff that he would have no future contact with Offender Burns. On July 2, 2012, plaintiff was released from PHD and returned to his regular protective housing in 7 Building, H Pod.

On July 7, 2012, plaintiff reported to the medical cage to wait for his daily insulin shot. Again, Offender Burns entered the medical area, unescorted, and without restraints. Offender Burns made eye contact with plaintiff, but before any physical contact could occur, Officer Raab, who was aware of the past assault, immediately called for assistance. Offender Burns was apprehended and removed, and plaintiff did not suffer any physical harm; however, plaintiff was shaken and terrified by the incident. Plaintiff

filed a second LID claim, and in response, he was moved to 11 Building while a second OPI was conducted. Thereafter, plaintiff again went before a UCC, and this time, it was recommended that plaintiff's LID claim be granted and that plaintiff be transferred to another unit. Plaintiff remained in transient (11 Building) housing, until his transfer to the Boyd Unit was completed, sometime in September 2012.

Plaintiff claims that defendants failed to protect him adequately as evidenced by the July 7, 2012 encounter with Offender Burns. He claims also that, when he was housed in 11 Building while the OPIs were being conducted, he frequently did not receive his daily insulin or his diabetic snack, in deliberate indifference to his serious medical needs. Finally, he claims that, following the initial June 8, 2012 assault by Offender Burns, he was effectively punished because he was placed in PHD and denied his regular privileges, as well as the ability to secure his medical treatment in a timely manner. He claims that, on the dates he did not receive his insulin, his blood sugar levels were too high and he suffered headaches and lightheadedness.

For relief, plaintiff seeks monetary damages against defendants for "pains and sufferings, physical, mental and emotional distress." (D.E. 1 at 4).

## III. Legal standard.

Regardless of whether a plaintiff has properly exhausted his administrative remedies, his action may be dismissed for failure to state a claim upon which relief can be granted. 42 U.S.C. § 1997e(c)(2). "To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the

United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988); *see also Biliski v. Harborth*, 55 F.3d 160, 162 (5th Cir. 1995). An action may be dismissed for failure to state a claim when it is clear that the prisoner can prove no set of facts in support of his claim entitling him to relief. *Oliver v. Scott*, 276 F.3d 736, 740 (5th Cir. 2002). The complaint must be liberally construed in favor of the prisoner and the truth of all pleaded facts must be assumed. *Id.*

**IV. Discussion.**

Plaintiff is suing Brad Livingston because "he is over all prisons and staff security." (D.E. 1 at 3). He is suing Warden Davis, Major Gonzalez, Major Castro, and Nurse Campos for "lack of concern of prisoners safety, medical care." *Id.* He contends that prison policy was not followed when 11 Building inmates were permitted to go to the medical department without escorts and unrestrained. Finally, he claims that he was effectively punished without due process when he was housed in 11 Building and 8 Building while the OPIs were conducted as he had no privileges and his medical care was compromised.

**A. Eleventh Amendment bars claims against defendants in their official capacities.**

Plaintiff did not identify in what capacity he has sued the defendants, so it is assumed he has sued them in their official and individual capacities.

The Eleventh Amendment bars claims against a state brought pursuant to 42 U.S.C. § 1983 for money damages. *Aguilar v. Texas Dep't of Criminal Justice*, 160 F.3d 1052, 1054 (5th Cir. 1998); *Farias v. Bexar County Bd. of Trustees for MHMR Servs.*, 925 F.2d 866, 875 n.9 (5th Cir. 1991). Section 1983 does not waive the state's sovereign immunity, *see Quern v. Jordan*, 440 U.S. 332, 338 n. 7 (1979), and Texas has not consented to this suit. *See Emory v. Texas State Bd. of Med. Exam'rs*, 748 F.2d 1023, 1025 (5th Cir. 1984).

Plaintiff's claims for compensatory and punitive damages against the individual defendants in their official capacities are barred because claims against state officials in their official capacities are essentially claims against the State itself.[2] *Mairena v. Foti*, 816 F.2d 1061, 1064 (5th Cir. 1987) (for purposes of § 1983 liability, a claim against a public official in his or her official capacity is in effect a suit against the state or local government he or she represents). Thus, the Eleventh Amendment bars plaintiff's claims against the individual defendants in their official capacities, and therefore, it is respectfully recommended that, to the extent plaintiff intended to sue the defendants in their official capacities for monetary damages, those claims be dismissed as barred.

[2] The Eleventh Amendment does not prohibit claims for injunctive relief against the State or individuals in their official capacities; however, plaintiff has not sought injunctive relief in this lawsuit. In addition, because plaintiff has been transferred off the McConnell Unit, any injunctive claims against the McConnell Unit defendants have been rendered moot. *See Edwards v. Johnson*, 209 F.3d 772, 776 (5th Cir. 2000) (request for injunctive and declaratory relief becomes moot when inmate leaves the complained-of facility).

**B. Personal involvement and supervisor liability.**

Plaintiff testified that he named Brad Livingston as a defendant because, as the TDCJ Director, it is his responsibility to ensure that all of the units operate correctly and that inmates are safe, protected and receive proper medical care. Similarly, he claims that Warden Davis, as warden of the McConnell Unit, is ultimately responsible for what happens at the unit.

To state a cause of action under § 1983, a plaintiff must identify defendants who were either personally involved in the constitutional violation or whose acts are causally connected to the constitutional violation alleged. *Woods v. Edwards*, 51 F.3d 577, 583 (5th Cir. 1995). In addition, it is well established that a § 1983 plaintiff cannot obtain damages or injunctive relief from a policy-maker or supervisor solely on a theory of *respondeat superior*. *Beattie v. Madison County School Dist.*, 254 F.3d 595, 600 n.2 (5th Cir. 1983) (citing *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 690 (1978)). "[S]upervisory officials are not liable for the actions of subordinates on any theory of vicarious liability." *Thompson v. Upshur County*, 245 F.3d 447, 459 (5th Cir. 2001) (quoting *Thompkins v. Belt*, 828 F.2d 298, 303 (5th Cir. 1987). "[Section] 1983 does not give a cause of action based on the conduct of subordinates. Personal involvement is an essential element of a civil rights cause of action." *Thompson v. Steele*, 709 F.2d 381, 382 (5th Cir.), *cert. denied*, 464 U.S. 897 (1983). A supervisor who is not personally involved is liable under the theory of "supervisory liability" only if he has implemented "a policy so deficient that the policy itself is a repudiation of

constitutional rights and is the moving force of the constitutional violation." *Thompkins*, 828 F.2d at 304. "Supervisory officials may be held liable only if: (i) they affirmatively participate in acts that cause constitutional deprivation; or (ii) implement unconstitutional policies that causally result in plaintiff's injuries." *Mouille v. City of Live Oak, Tex.*, 977 F.2d 924, 929 (5th Cir. 1992).

At the *Spears* hearing, plaintiff admitted that he has never met, let alone spoken to Brad Livingston. He does not suggest that Mr. Livingston has implemented any unconstitutional policy. Plaintiff is attempting to hold Mr. Livingston liable for the allegedly unconstitutional actions of his subordinates, and § 1983 expressly prohibits such supervisor liability. Thus, it is respectfully recommended that plaintiff's claims against Brad Livingston be dismissed.

Similarly, plaintiff has sued Warden Davis because she is the "the supervisor/director of McConnell Unit prison." (D.E. 1 at 3). Plaintiff claims that he wrote an I-60 to Warden Davis complaining of problems with security and receiving his insulin, but that she failed to resolve his problems. The fact that plaintiff might have directed an I-60 complaint to Warden Davis does not equate with Warden Davis being personally involved in a constitutional violation. Indeed, the Fifth Circuit has held that, given the size of the TDCJ and the operations that wardens oversee, they cannot be expected to intervene personally in response to every inmate complaint or letter they receive. *Johnson v. Johnson*, 385 F.3d 503, 526 (5th Cir. 2004). In addition, a prisoner has no constitutional right to a response to a grievance. *Geiger v. Jowers*, 404 F.3d 371,

373 (5th Cir. 2005) (prisoners do not have a federally protected liberty interest in having grievances investigated or resolved). Thus, plaintiff fails to state a cognizable constitutional claims against Warden Davis, and it is respectfully recommended that his claims against her be dismissed.

**C. Failure to protect.**

Plaintiff claims that Major Gonzalez and Major Castro failed to protect him from Offender Burns because, following the June 8, 2012 assault, they denied him a unit transfer but assured him that he would be safe and have no further contact with Offender Burns. However, on July 7, 2012, Offender Burns was again loose in the medical area at the same time plaintiff was there, although Officer Raab immediately called for assistance and no harm came from the incident.

Prison officials have a duty to protect prisoners from violence at the hand of other prisoners. *Cantu v. Jones*, 293 F.3d 839, 844 (5th Cir. 2002) (citing *Farmer v. Brennan*, 511 U.S. 825, 832 (1994)). A prison official is deliberately indifferent to the inmate's safety if the official knows that the inmate faces a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it. *Cantu*, 293 F.3d at 844 (citing *Farmer*, 511 at 847). Deliberate indifference describes a state of mind "more blameworthy than negligence;" there must be "more than ordinary lack of due care for the prisoner's interests or safety." *Farmer*, 511 U.S. at 835.

Plaintiff testified that, prior to the June 8, 2012 assault, he had never filed a LID claim or advised any officials of a problem with Offender Burns.[3] Indeed, as a P-2 inmate, prison officials had already identified plaintiff as one that needed extra protection, and this was being achieved through his classification and housing. Following the June 8, 2012 assault, an OPI was conducted and a UCC hearing was held. Major Gonzalez and Major Castro acknowledged the assault, but did not recommend that either plaintiff or Offender Burns be transferred off the McConnell Unit, but instead, ordered that they not be housed together, and assured plaintiff that he would be safe. It is not known how Offender Burns managed to appear at the medical area again on July 7, 2012, but prison officials, and in particular, Officer Raab, were obviously well-briefed and prepared enough to recognize the dangerous situation and have it quickly adverted with no harm to plaintiff. Following the second incident, a second OPI was conducted, and at the second UCC, a unit transfer was approved.

The fact that plaintiff saw Offender Burns in the medical department on July 7, 2012 without incident does not establish that either Major Gonzalez or Major Castro ignored a serious risk to plaintiff. Indeed, prisons are inherently dangerous places, and plaintiff's allegations do not suggest that defendants have exposed him to conditions considerably more dangerous than those in normal prison life. *Farmer*, 511 U.S. at 844 (prison officials who respond reasonably to a risk, even if the harm is not ultimately averted, cannot be found liable under the Eighth Amendment). Prison officials are not

[3] Plaintiff had filed grievances complaining about the conduct of certain prisoners in the medical cage and general area; however, those complaints did not concern his personal safety.

expected to prevent all inmate-on-inmate violence. *Adames v. Perez*, 331 F.3d 508, 512 (5th Cir. 2003). Taking plaintiff's allegations as true, he fails to establish that any defendant was deliberately indifferent to his health and safety. To the contrary, Major Castro and Major Gonzalez both saw that his claims were investigated and a proposed plan to ensure his safety set in place, and communicated to staff. When it was determined that the McConnell Unit could not ensure his safety, in part due to his daily medical visits, a transfer was recommended and swiftly effected. The fact that plaintiff suffered fear and anxiety on July 7, 2012 does not equate with a finding that prison officials ignored a serious threat to his safety.[4] Plaintiff fails to state sufficient facts to establish a cognizable failure to protect claim against Major Gonzalez or Major Castro, and it is respectfully recommended that his failure to protect claims be dismissed.

**D. Deliberate indifference to serious medical needs.**

Plaintiff contends that, following the June 8, 2012 assault, he was held in PHD in 11 Building until July 2, 2012, and during that time, he failed to receive his insulin as many as ten times during that 4-week time frame, and often received his shot late in the day.[5] As a consequence thereof, his blood sugar was not controlled and he suffered

[4] In addition, 42 U.S.C. § 1997(e) provides that "[n]o federal civil action may be brought by a prisoner for mental or emotional injury suffered while in custody without a prior showing of physical injury." The physical injury requirement of 1997(e) "must be more than *de minimis* but need not be significant." *Harper v. Showers*, 174 F.3d 716, 719 (5th Cir. 1999).

[5] In his original complaint, plaintiff alleged that he did not receive his insulin twice in July 2012, and on other days, he was given his insulin shot late in the day. (*See* D.E. 5-1 at 7-8). He also complained that on some days he did not receive his diabetic snack.

headaches and other symptoms. He claims that Major Gonzalez and Major Castro were responsible for his not receiving proper medical attention because they moved him to PHD, and he claims that Nurse Campos failed to ensure that he received his insulin each day.

Deliberate indifference to a prisoner's serious illness or injury states a cause of action under § 1983." *Estelle v. Gamble*, 429 U.S. 97, 105 (1976). "Deliberate indifference describes a state of mind more blameworthy than negligence;" there must be "more than ordinary lack of due care for the prisoner's interests or safety." *Farmer*, 511 U.S. at 835 (1994) (construing *Estelle*, 429 U.S. at 104). To establish an Eighth Amendment violation, an inmate must show that a prison official "act[ed] with deliberate indifference [and] exposed a prisoner to a sufficiently substantial risk of serious damage to his future health." *Id.* at 37.

A mere disagreement with the level and type of treatment is not actionable under the Eighth Amendment. *Estelle*, 429 U.S. at 107; *Norton v. Dimazana*, 122 F.3d 286, 292 (5th Cir. 1997); *Banuelos v. McFarland*, 41 F.3d 232, 235 (5th Cir. 1995); *Young v. Gray*, 560 F.2d 201 (5th Cir. 1977). An incorrect diagnosis does not state an Eighth Amendment claim because the deliberate indifference standard has not been met. *Domino v. Texas Dep't of Criminal Justice*, 239 F.3d 752, 756 (5th Cir. 2001). A "plaintiff must show that the officials refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs." *Id.* (quoting *Johnson v. Treen*,

759 F.2d 1236, 1238 (5th Cir. 1985)). Delay in treatment may be actionable under § 1983 only if there has been deliberate indifference and the delay results in substantial harm. *Stewart v. Murphy*, 174 F.3d 530, 537 (5th Cir. 1999); *Mendoza v. Lynaugh*, 989 F.2d 191, 195 (5th Cir. 1993). An inmate displaying diabetic symptoms conveys a serious medical need, and a defendant's failure to respond to that need may constitute deliberate indifference. *Gobert v. Caldwell*, 463 F.3d 399, 345 n. 12 (5th Cir. 2006).

Taking plaintiff's allegations as true, his complaints do not suggest that defendants refused to treat him or intentionally ignored his serious medical needs in violation of the Eighth Amendment. As to Major Gonzalez and Major Castro, they moved him to PHD following the June 8, 2012 assault while an OPI was conducted and for his own safety. A consequence of that housing assignment was having to be escorted to medical. Indeed, Nurse Campos told plaintiff that it was more difficult for diabetic inmates housed on 11 Building to receive their insulin timely because there was a shortage of officers to escort 11 Building inmates to medical. However, the housing situation was temporary and when he was placed back in 7 Building, he received his insulin daily and on time. His allegations fail to establish that any defendant consciously ignored a serious medical need.

**E. Failure to follow TDCJ-CID policy.**

Plaintiff claims that defendants violated TDCJ-CID policy when they allowed close-custody inmates to attend medical unattended and unescorted. However, a mere violation of a state rule, policy, or regulation does not without more, equate to a federal

constitutional violation. *See Myers v. Klevenhagen*, 97 F.3d 91, 94 (5th Cir. 1996) (prison officials' failure to follow own policy in and of itself does not state a constitutional violation). This allegation fails to state a cognizable claim.

**F. Due process.**

Plaintiff suggests that he was effectively punished without due process when, following the June 8, 2012 assault, he was placed in PHD, despite the fact that he was assaulted and had in no way instigated the encounter between himself and Offender Burns. In PHD, he was not permitted to attend his medical appointments at will or have other privileges that he had in 7 Building.

In *Sandin v. Conner*, 515 U.S. 472, 484 (1995), the Supreme Court held that state created liberty interests are generally limited to freedom from the restraints that impose "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." The *Sandin* court found that a prisoner's thirty-day placement in segregated confinement did not pose such a hardship as to implicate due process protections. *Sandin*, 515 U.S. at 483. However, where a prisoner was facing solitary confinement of an indefinite period coupled with a loss of parole consideration, the Court found due process was mandated. *Wilkinson v. Austin*, 545 U.S. 209, 211 (2005).

In this case, plaintiff admits that, following an altercation, both inmates are placed in PHD while the matter is investigated. In addition, here, plaintiff filed an LID and it needed to be investigated via an OPI. Thereafter, he needed to go before a UCC before he could be returned to 7 Building. He admits that he was not charged with disciplinary

case following the assault nor did any defendant suggest that his housing assignment was punishment. The inconvenience of being held in less desirable housing for a finite period of time does not give rise to a cognizable constitutional violation, and it is respectfully recommended that this claim be dismissed for failure to state a claim and/or as frivolous.

**V. Recommendation.**

For the reasons stated above, it is respectfully recommended that all of plaintiff's claims against the named defendants be dismissed with prejudice for failure to state a claim upon which relief can be granted and/or as frivolous pursuant to 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(b)(1).

Respectfully submitted this 8th day of July, 2013.

Jason B. Libby
United States Magistrate Judge

## NOTICE TO PARTIES

The Clerk will file this Memorandum and Recommendation and transmit a copy to each party or counsel. Within **FOURTEEN (14) DAYS** after being served with a copy of the Memorandum and Recommendation, a party may file with the Clerk and serve on the United States Magistrate Judge and all parties, written objections, pursuant to Fed. R. Civ. P. 72(b), 28 U.S.C. § 636(b)(1), General Order No. 2002-13, United States District Court for the Southern District of Texas.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within FOURTEEN (14) DAYS after being served with a copy shall bar that party, except upon grounds of *plain error*, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the District Court. *Douglass v. United Servs. Auto Ass'n*, 79 F.3d 1415 (5th Cir. 1996) (en banc).